IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| THE PHILADELPHIA HOUSING AUTHORITY | : | CIVIL ACTION |
| | : | |
| v. | : | |
| | : | No. 05-2390 |
| MICHAEL O. LEAVITT, et al. | : | |

**MEMORANDUM**

Ludwig, J.                                                                                                          October 17, 2006

This is an appeal from a decision by the United States Department of Health and Human Services' Departmental Appeals Board affirming the issuance of a "Notice of Termination" of a Head Start program by the Administration for Children and Families. ACF found plaintiff's operation of the program to have been deficient under the applicable regulations - and then not fully remediated under a compliance plan proposed by plaintiff and approved by HHS.[1] The parties filed cross-motions for summary judgment. Plaintiff moved to vacate the Board's decision and remand the matter for an evidentiary hearing while continuing Head Start grantee funding. Defendants moved

---

[1] Philadelphia Housing Authority, Docket No. A-04-126, Decision No. 1977, dated April 29, 2005. Plaintiff is the Philadelphia Housing Authority; defendants are Michael O. Leavitt, Secretary of Health and Human Services, Wade F. Horn, Assistant Secretary for Children and Families, and Joan E. Ohl, Commissioner of the Administration for Children, Youth and Families.

As defendants note, under the Administrative Procedures Act, the proper defendant is the United States, the agency involved, or the appropriate officer in his or her official capacity. 5 U.S.C. § 703. Here, the Department of Health and Human Services is the affected agency, and its Secretary, defendant Leavitt, the proper named defendant. All claims against defendants Horn and Ohl were, therefore, dismissed.

to affirm the Board's decision.[2] By order dated September 29, 2006, defendants' motion was granted, and plaintiff's was denied. Fed R. Civ. P. 56.[3] Jurisdiction is federal question; and this decisional review comes under the Administrative Procedures Act, 5 U.S.C. § 702, et seq.

The following is undisputed: PHA was a grantee operating a Head Start program in Philadelphia, a program administered by the U.S. Department of Health and Human Services, and overseen by ACF.[4] In January 2003, ACF performed a review of PHA's program and identified a variety of deficiencies.[5] In March 2004, a follow-up review[6] disclosed that several deficiencies had

---

[2] In its response to defendants' motion, PHA agreed that "in light of the Federal Defendants' admission that Count II (challenging the Board's affirmance of ACF's Notice of Termination) is properly before this Court . . . Counts I, III and IV of PHA's Complaint are largely academic and their substance is fairly encompassed in Count II." Plaintiff's Response, n.2. PHA did not file any opposition to defendants' motion for summary judgment on these counts, and judgment was therefore entered in favor of remaining defendant Leavitt on Counts I, III and IV.

[3] "A court may grant summary judgment only when the submissions in the record 'show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law.' . . . 'In determining whether summary judgment is appropriate, "[t]he evidence of the non-movant is to be believed, and all justifiable inferences are to be drawn in his favor."' . . . 'The inquiry is "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law."'" Sommer v. The Vanguard Group, – F.3d –, – 2006 WL 2441970, *6 (3d Cir., filed Aug. 24, 2006) (citations omitted).

[4] "Head Start" is a program created and operated under the Head Start Act, 42 U.S.C. § 9831, et seq. The Department of Health and Human Services is responsible for disbursement of Head Start Funds, 42 U.S.C. § 9832(16).

[5] A "deficiency" is a "failure to perform substantially" the regulatory requirements under the Head Start Act. 45 C.F.R. § 1304.3(a)(6)(i)(C).

[6] PHA was required to correct the deficiencies by February 25, 2004 under a revised "QIP" - a Quality Improvement Plan submitted by PHA. August 4, 2003 letter from HHS to PHA; October 10, 2003 letter from HHS to PHA; 45 C.F.R. § 1304.60(b).

not been corrected.[7] On May 28, 2004, ACF issued a Notice of Termination. On June 28, 2004, PHA filed a notice of appeal with the Board. On August 2, 2004, ACF filed a motion for summary disposition. On February 1, 2005, the Board heard argument on ACF's motion and, on April 20, 2005, issued a decision affirming the Notice of Termination. Administrative Record, 1-28.

On May 20, 2005, PHA filed this action appealing the Board's decision, together with a motion for a temporary restraining order and a preliminary injunction. On June 2, 2005, a consent order was entered, permitting PHA to continue to provide child-care services to children in its Head Start program through June 10, 2005, the end of the then-current school year.[8]

The parties do not agree on the standard of review to be applied to the Board's decision. According to the government, the Board's decision is entitled to great deference and should be disturbed only for an abuse of discretion. 5 U.S.C. § 706(2)(A); Yeboah v. United States Department of Justice, 345 F.3d 216, 221 (3d Cir. 2003). PHA's position: Inasmuch as the agency action at issue was a summary disposition, involving purely a matter of law, review is properly de novo. Armstrong v. Commodoties Future Trading Comm'n, 12 F.3d 401, 403 (3d Cir. 1993) ("[o]n questions of law, administrative judgments are generally subject to plenary judicial review."); Dill v. Immigration and

---

      PHA notes that, in response to complaints lodged by PHA alleging bias on the part of the reviewers, HHS sent a second review team to conduct a new follow-up review. Plaintiff's Response, at 6. However, the second team also found deficiencies. Head Start Review Report, April 2004, Administrative Record, 260-88.

      [7] These included a failure to reach the required enrollment of 210 children, permitting a hazardous condition to exist at a Head Start facility, and various problems with program governance. April 2004 Report, Administrative Record, 269-271.

      [8] A new Head Start provider that had already been designated by the time PHA filed this action is, presumably, providing services under the Head Start Act.

Naturalization Service, 773 F.2d 25, 28 (3d Cir. 1985) ("On questions of law, administrative judgment is subject to plenary judicial review.").

However, the Board's decision stands whichever standard of review is deemed appropriate.[9]

According to PHA, the Board erred as a matter of law because, in affirming ACF's Notice of Termination, it incorrectly held plaintiff to an overly strict measure of compliance with the regulations. While PHA agrees that a program operator must correct deficiencies for which it has been cited in order to avoid termination, the degree of correction, it argues, need only amount to substantial performance. Defendant counters that although a deficiency itself is defined as a "failure to perform substantially [a programmatic] requirement . . .", 45 C.F.R. § 1304.3(a)(6)(i)(C), once formal notice of a deficiency has been given, program operators must - in the words of the regulation and the statute - "correct" or "eliminate" the deficiency to avoid termination. 45 C.F.R.1304.60(f)[10]; 42 U.S.C. § 9836a(d)(1)(c) and 2(A)(i-iii)[11]. Plaintiff misperceives the ongoing applicability of the

---

[9] Here, the question as decided by the Board included mixed law and fact, and therefore an abuse of discretion standard should be applied to the Board's determination. Gordon v. Lewistown Hospital, 423 F.3d 184, 201 (3d Cir. 2005) ("[W]here we are confronted with mixed questions of fact and law, we apply the clearly erroneous standard.").

[10] "If an Early Head Start or Head Start grantee fails to correct a deficiency, either immediately, or within the timeframe specified in the approved Quality Improvement Plan, the responsible HHS official will issue a letter of termination or denial of refunding." 45 C.F.R. 1304.60(f).

[11] After a deficiency is found, HHS may "initiate proceedings to terminate the designation of the agency unless the agency corrects the deficiency" and "In order to retain a designation as a Head Start agency . . . a Head Start agency that is the subject of a determination [that a deficiency exists] shall . . . (iii) eliminate each deficiency identified, not later than the date for elimination of such deficiency specified in such plan (which shall not be later than one year after the date the agency received notice of the determination and of the specific deficiency to be corrected)." 42 U.S.C. § 9836a(d)(1)(C) and 2(A)(i-iii).

regulatory definition of "deficiency" - i.e., that a deficiency can be corrected and eliminated by substantial performance. That definition is prospective and pertains to the operation of a program before it has been cited for a deficiency - not to the curing of a deficiency. This is the clear and most sensible reading of the regulatory provisions in question.

On this issue, the Board's decision went further: "Although we conclude that ACF could reasonably require full compliance to correct deficiencies under 45 C.F.R. § 1304.3(a)(6)(i)(c), the outcome in this case is not dependent on that conclusion. In our review of the facts below, we would conclude that PHA did not raise a material dispute of fact as to whether it was substantially performing in the relevant areas." Decision, Administrative Record, 11. The Board's analysis was that PHA's performance was inadequate under PHA's own theory that a cited deficiency can be rectified by substantial performance.

As the record shows, for example, PHA did not meet enrollment requirements. As a matter of regulatory law, financial assistance under the Head Start Program may be terminated where "the grantee has failed to timely correct one or more deficiencies as defined in 45 CFR Part 1304." 45 C.F.R. § 1303.14(b)(4). During the January 2003 review, ACF found that only 191 children were enrolled in PHA's program, not the requisite 210 - which PHA admitted in the appellate proceedings before the Board, in its response to ACF's motion for summary disposition. Administrative Record, 206. PHA also admitted that during the QIP period, from the time of the initial review in January 2003 through February 25, 2004 (the end of the QIP period), it did not enroll 210 children at any time. Administrative Record, 209-10. As a result, the undisputed facts

5

before the Board were that PHA was deficient in this regard upon initial review and, thereafter, did not correct the deficiency.

PHA produced evidence that on February 27, 2004, two days after the QIP expired, 206 children were enrolled in its program, and the Board "assum[ed] for purposes of summary judgment that PHA had 206 children actually enrolled as of February 27, 2004." Decision, Administrative Record, 14. But, rejecting plaintiff's substantial performance argument, the Board found no material dispute that PHA had not satisfied Head Start's enrollment requirements, which constituted a continuing and uncorrected deficiency.[12]

BY THE COURT:

*/s/ Edmund V. Ludwig*
Edmund V. Ludwig, J.

---

[12] The Board considered evidence of post-QIP conduct notwithstanding that "[t]o require ACF to look beyond that period would effectively extend that period of correction and would be inconsistent with the requirement." Decision, Administrative Record, 15.